UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| DANIEL SMITH, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 2:24-cv-00299-JPH-MJD |
| | ) |
| TRICIA PRETORIUS Warden, | ) |
| | ) |
| Respondent. | ) |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Daniel Smith's petition for a writ of habeas corpus challenges his conviction and sanctions in prison disciplinary case ISF 24-01-000182. For the following reasons, his petition is denied, and this case is dismissed with prejudice.

**I. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass.*

*Corr. Inst. v. Hill,* 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

## II. Facts

In September 2023, investigators at Putnamville Correctional Facility suspected Mr. Smith of conspiring to traffic suboxone into the prison. Dkt. 9-2. Investigator Whittington listened to recordings of Mr. Smith's phone calls and believed he was coordinating with multiple people outside the prison to collect suboxone, then fire it over the prison fence with a slingshot when he would be at recreation and able to collect it. *Id.*

Based on that information, Investigator Whittington issued a conduct report on January 19, 2024, charging Mr. Smith with conspiring or attempting to traffic. Dkt. 9-1. In the conduct report, Investigator Whittington quotes portions of phone calls and explains that, based on his experience and training, he understood them to be coded references to suboxone. *Id.*

Mr. Smith received written notice of the charge on January 30, 2024. Dkt. 9-3. At that time, Mr. Smith requested to review the recorded phone calls that were the basis for the conduct report. *Id.* The recordings were played for Mr. Smith at his disciplinary hearing on February 14, 2024, but not before.

The hearing officer found Mr. Smith guilty and imposed sanctions, including a loss of earned credit time and a demotion in credit-earning class. Dkt. 9-5. The hearing officer explained that he found certain references in the phone calls to be suspicious and that he trusted the investigator's interpretation of the phone calls based on his training and experience. *Id.*

2

Mr. Smith's disciplinary appeals were unsuccessful. Dkts. 9-7, 9-8.

### III. Analysis

Mr. Smith raises three challenges to his disciplinary conviction and sanctions.

**A.     Sufficiency of the Evidence**

In a prison disciplinary proceeding, the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted).

The "'some evidence' standard" is "a 'meager threshold.'" *Jones v. Cross*, 637 F.3d 841, 849 (7th Cir. 2011) (quoting *Scruggs*, 485 F.3d at 939). Once the Court finds "some evidence" supporting the disciplinary conviction, the inquiry ends. *Id.* This Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000)).

3

Here, there is evidence supporting the hearing officer's determination that Mr. Smith was guilty of attempting or conspiring to traffic suboxone. Investigator Whittington, who has training "in detecting coded language", dkt. 9-5 at 1, explained in his conduct report that he listened to Mr. Smith's phone calls and heard references to package stamps and Powerball tickets, plus phrases like "the thinner the better," that he understood from his training and experience to be references to suboxone. Dkt. 9-1. Investigator Whittington also documented that Mr. Smith discussed times that coincided with his housing unit's recreation schedule and told his correspondents to keep track of the weather. *Id.* Based on these discussions, Investigator Whittington inferred that Mr. Smith was coordinating efforts to bring suboxone into the prison. The phone calls and Investigator Whittington's statements about their meanings are evidence of Mr. Smith's guilt, and that is all the Constitution requires.

Mr. Smith challenges the accuracy of some of the evidence. *See* dkt. 2 at 5. He notes that the "date of incident" on the conduct report is listed as January 19, 2024, although the report clearly refers to phone calls made in 2023. Further, the report does not identify the specific dates of his phone calls. Mr. Smith also disputes that the times discussed in the phone calls actually aligned with his unit's recreation schedule. Mr. Smith was free to raise these arguments to the hearing officer, but they do not entitle him to habeas relief—the Court may not "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348.

Mr. Smith also argues that the hearing officer's decision is based on suspicion, not evidence. Dkt. 2 at 8. He specifically takes issue with the hearing officer's reliance on Investigator Whittington's interpretation of references to a slingshot. While the hearing officer could have interpreted or weighed the evidence differently, he based his decision on evidence provided in Investigator Whittington's conduct report. Moreover, the hearing officer knew that Investigator Whittington was "trained in detecting coded language", dkt. 9-5 at 1.

Mr. Smith next argues that the evidence was insufficient to support a conviction because the record did not include the dates of the phone calls or the identities of the participants. This is a challenge to the *weight* of the evidence supporting his conviction, not to the fact that *some evidence* supports the hearing officer's finding. The fact that the prison staff could have assembled additional evidence does not undermine the constitutional sufficiency of the evidence.

Last, Mr. Smith argues that Investigator Whittington's interpretation of the phone calls based on his experience and training is not sufficient evidence that he attempted to traffic suboxone. Dkt. 12 at 8–9. But under the "some evidence" standard, an officer's testimony based on training and experience may be sufficient to support a disciplinary action. *See id.*; *Ellison*, 820 F.3d at 275 ("Perhaps chemical testing would've been superfluous had Officer Bynum testified that, based on his training and experience, he recognized the substance as heroin.") (citing *United States v. Sanapaw*, 366 F.3d 492, 496 (7th Cir. 2004)). And here, as discussed above, it was reasonable for the hearing officer to rely on

5

Investigator Whittington's interpretation of the phone calls as using coded language to discuss surreptitiously make plans to get suboxone to Mr. Smith. Mr. Smith was free to argue to the hearing officer that Investigator Whittington did not adequately demonstrate his training or experience or his basis for determining that his phone conversations were coded messages about suboxone trafficking. But these are arguments go to the weight of the evidence not whether there was some evidence.

**B.     Sufficiency of Notice**

Mr. Smith next argues that he was deprived of his right to notice because he was not given an opportunity to review the phone calls or information about them before the hearing. Dkt. 12 at 5. Due process requires that an inmate be given advance "written notice of *the charges* . . . in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Wolff*, 418 U.S. at 564 (emphasis added). "The notice should inform the inmate of *the rule allegedly violated* and *summarize the facts* underlying the charge." *Northern v. Hanks*, 326 F.3d 909, 910 (7th Cir. 2003) (citations and quotation marks omitted; emphasis added).

Before his hearing, due process entitled Mr. Smith to learn what rule he was accused of violating and the basic facts underlying the accusation. He does not dispute that he received this information more than 24 hours before his hearing. Rather, Mr. Smith argues that he had a right to receive details of the phone calls before the hearing. The Constitution guaranteed Mr. Smith an opportunity to learn of his charges before the hearing and an opportunity to

6

present evidence at the hearing—not an opportunity to review the evidence before the hearing.

**C. Access to Evidence**

Due process affords an inmate in a disciplinary proceeding a limited right to present "evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. But due process is not violated unless the inmate is deprived of an opportunity to present *material, exculpatory* evidence. *See Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see Jones*, 637 F.3d at 847, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008). The habeas petitioner faces the burden of establishing that any evidence he was denied was material and exculpatory. *See Piggie*, 344 F.3d at 678 (noting the petitioner did not "explain how [the requested witness's] testimony would have helped him" and thus "the district court properly denied relief" on the petitioner's claim that he was wrongfully denied a witness).

Again, Mr. Smith argues that he was deprived of due process because the prison staff did not provide him with the phone calls or information about the phone calls before the hearing. But due process only entitled him to access and present material, exculpatory evidence—not to access it before his hearing.

Mr. Smith also argues that he was deprived of due process because he was not told when the phone calls were made or who the other participants in the

7

calls were, but he has not demonstrated that this information would have been material or exculpatory. He states in his petition that such information would show that the "calls are in totally different time frames, to different people, and unrelated." Dkt. 2 at 10. But that was never in dispute. The conduct report refers to multiple phone calls and concludes that Mr. Smith was working "with multiple civilians." Dkt. 9-1. He has not articulated any reason why knowing the precise dates or times of the calls or the identities of the other callers would have raised a reasonable probability of a different result.

## IV. Conclusion

Mr. Smith's petition for a writ of habeas corpus is **denied**. This action is **dismissed with prejudice**. The **clerk is directed** to enter **final judgment**.

**SO ORDERED.**

Date: 5/12/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:
DANIEL SMITH
167246
PUTNAMVILLE – CF
PUTNAMVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All electronically registered counsel